IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LUCTORICA YOUNG** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner of Social Security** )<br>)<br>**Defendant.** )<br>) | Civil Action No. WGC-15-3295 |

## MEMORANDUM OPINION

Plaintiff Luctorica Young ("Ms. Young" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 2, 7.[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 16). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

---

[1] The case was subsequently reassigned to the undersigned.

1

1. **Background**.

On June 5, 2012[2] Ms. Young protectively filed applications for DIB[3] and SSI alleging a disability onset date of June 5, 2012 due to rheumatoid arthritis. R. at 69, 78, 87, 98. Ms. Young's applications were initially denied on August 29, 2012. R. at 108-11, 112-15. Ms. Young requested reconsideration on September 13, 2012, R. at 119, and on February 13, 2013, the applications were denied again. R. at 121-22, 123-24. On February 22, 2013, Ms. Young requested a hearing before an Administrative Law Judge ("ALJ"). R. at 125-26. On April 1, 2014 an ALJ convened a hearing via video teleconference.  R. at 25-36. Ms. Young was represented by counsel.  During the hearing the ALJ obtained testimony from Ms. Young and a vocational expert ("VE").  In the April 24, 2014 decision the ALJ found Ms. Young has not been under a disability as defined in the Social Security Act, from June 5, 2012 through the date of the decision. R. at 19-20. On June 12, 2014 Ms. Young requested a review of the hearing decision. R. at 7. On August 27, 2015 the Appeals Council denied Ms. Young's request for review, R. at 1-3, making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Ms. Young's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920 (2014). Ms. Young bears the burden of demonstrating her disability as to the first four steps. At step five the burden shifts to the Commissioner. *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

---

[2] The application for SSI is dated June 14, 2012. *See* R. at 154. The application for DIB is dated June 14, 2012. *See* R. at 160.

[3] "The claimant meets the insured status requirements of the Social Security Act through December 31, 2017." R. at 14. *See also* R. at 173. However on three, separate *Disability Report – Field Office – Form SSA 3367*, December 31, **2016** is listed as the date last insured. *See* R. at 188, 245, 253.

At step one the ALJ found Ms. Young has not engaged in substantial gainful activity since June 5, 2012, the alleged onset date. R. at 14. The ALJ concluded at step two that Ms. Young has the following severe impairments: rheumatoid arthritis, asthma by history, and obesity. *Id.* Also at this step the ALJ determined all other impairments alleged or found in the record are non-severe "because they did not exist for a continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations." R. at 15 (citations omitted).

At step three the ALJ found Ms. Young does not have an impairment or combination of impairments which meets or medically equals a listed impairment. The ALJ specifically considered Listings 1.00 (musculoskeletal system), 3.00 (respiratory system), and 14.00 (immune system disorders). As for Ms. Young's obesity, there is no entry in the Listing of Impairments for this condition. *Social Security Ruling 02-1p* recognizes the adverse impact of obesity upon co-existing impairments. The ALJ noted obesity may affect the cardiovascular and respiratory systems, "making it harder for the chest and lungs to expand and imposing a greater burden upon the heart." R. at 15. The combined effect of obesity and arthritis on a weight bearing joint "may [cause] more pain and limitation than might be expected from arthritis alone." *Id.* The ALJ considered Ms. Young's obesity by itself and in conjunction with her other impairments. He found the clinical signs and diagnostic findings clearly show Ms. Young's obesity does not meet or medically equal any entries in the Listing of Impairments.

Next, the ALJ proceeded to determine Ms. Young's residual functional capacity ("RFC"). The ALJ found Ms. Young has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) except,

> she should not engage in climbing, work at unprotected heights, or
> work around dangerous machinery. She can perform no more than

> occasional stooping or squatting, but no crawling. She can perform no overhead work. She cannot be exposed to excessive amounts of dust, smoke, or other air pollutants. She enjoys gross use of the hands, but cannot engage in repetitive gripping, as would be required in assembly line work.

R. at 15.

At step four the ALJ found Ms. Young is capable of performing her past relevant work as a staffing clerk, a sedentary semiskilled position according to the VE. "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed." R. at 18.

In the alternative the ALJ proceeded to step five. The ALJ considered Ms. Young's age (37 years old on the alleged disability onset date, defined as a younger individual age 18-44), education (high school; able to communicate in English), past work experience (transferability of job skills is not material) and her RFC (sedentary work with various limitations). The ALJ found the Social Security Administration ("SSA") met its burden of proving that Ms. Young is capable of performing various other jobs[4] that exist in significant numbers in the national economy, relying on the testimony of the VE. R. at 19, 34-35. Accordingly, the ALJ concluded that Ms. Young has not been under a disability, as defined by the Act, from June 5, 2012 through the date of the decision. R. at 19-20.

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Mascio*, 780 F.3d at 634; *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

---

[4] Charge account clerk and appointment clerk. R. at 19, 34-35.

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

4. **Discussion.**

Plaintiff alleges two errors by the ALJ which the court considers below.

　　A.　　The ALJ "Erroneously" Assessed Plaintiff's RFC

　　　　1.　　Challenging Specific Limitations

Plaintiff asserts, although the ALJ performed the function-by-function assessment in accordance with Social Security Ruling ("SSR") 96-8p, "he failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." ECF No. 15-1 at 5-6. Specifically, Plaintiff contends the ALJ failed to provide explanations to support his findings that she (a) was limited to sedentary work, (b) could not climb, work at unprotected heights, or work around dangerous machinery, (c) could occasionally stoop or squat, but could not crawl[5], (d) could not perform any overhead work, (e)

---

[5] In the hypothetical question presented to the vocational expert, the ALJ stated in pertinent part, "this individual could not engage in climbing or work at unprotected heights or around dangerous machinery; *only occasional* stooping, or squatting or *crawling*; no work overhead. . . ." R. at 34 (emphasis added). However, in the decision the ALJ determined Ms. Young's residual functional capacity excluded crawling. *See* R. at 15. This shift from occasional crawling to no crawling is not relevant to the representative occupations such as a charge account clerk (DOT 205.367-014) and an appointment clerk (DOT 237.367-010) since crawling is not present, meaning the activity or condition does not exist for these positions. At step four the ALJ found Ms. Young is able to perform the duties of a staffing clerk as generally performed, based on the VE's testimony. R. at 18. Because the VE did not identify the Dictionary of Occupational Title number, the undersigned does not know whether the job included occasional crawling or crawling is not present for the position. The undersigned finds no reversible error. The ALJ erred in changing the crawling limitation from *occasional* (what the VE's testimony is based upon) to *no* crawling (in the decision).

could not be exposed to excessive amount of dust, smoke, or other air pollutants, and (f) could not engage in repetitive gripping. *Id.* at 6.

A review of the ALJ's decision reveals evidence supporting the RFC determination. For instance, Ms. Young testified that she cannot lift over her head because the pain is so bad across her shoulder. *See* R. at 32. The ALJ found her testimony credible and did not rely upon the opinion of Dr. P.H. Moore, State agency doctor at the initial consideration, who did not find such a limitation, *see* R. at 73-74, 82-83, nor the opinion of Dr. S.K. Najar, State agency doctor at the reconsideration level, who specifically found Ms. Young is *unlimited* in reaching in any direction, including overhead, *see* R. at 93, 104. "The opinions of the Disability Determination Services consultants are given only moderate weight, as the undersigned has elected to assess a more restrictive residual functional capacity for the claimant, based on the combination of her impairments, particularly her rheumatoid arthritis and obesity." R. at 18 (citation omitted). Ms. Young's treating rheumatologist, Kundan A. Karkhanis, opined Ms. Young could *never* reach including overhead. R. at 344. The ALJ found some credence to this opinion but rejected the severity of the limitation, as reflected by the moderate weight the ALJ assigned to Dr. Karkhanis' opinions.

Although the State agency doctors at the initial consideration and reconsideration level found Ms. Young has the residual functional capacity to perform work at the light exertional level, the ALJ found Ms. Young has the capacity to perform work at the sedentary exertional level. "The opinions of the Disability Determination Services consultants are given only moderate weight, as the undersigned has elected to assess a more restrictive residual functional capacity for the claimant, based on the combination of her impairments, particularly her rheumatoid arthritis and obesity." R. at 18 (citation omitted).

The ALJ accorded weight to the opinion of Dr. Najar, the State Agency doctor at the reconsideration level, who determined Ms. Young can never climb ladders/ropes/scaffolds (based on Ms. Young's obesity and inflammatory arthritis) and must avoid concentrated exposure to hazards, *i.e.,* machinery, heights, etc. *See* R. at 92-94, 103-05. Ms. Young's treating rheumatologist also opined she should never work with or around hazardous machinery, and should be exposed only occasionally to environmental irritants such as dust. *See* R. at 344. Further, unlike Dr. Moore, Dr. Najar considered Ms. Young's asthma by history as well as her inflammatory arthritis and opined she should avoid concentrated exposure to extreme cold and humidity. *See* R. at 93, 104. Similarly, Dr. Karkhanis, Ms. Young's treating rheumatologist, noted cold and damp conditions will exacerbate her arthritic pain. *See* R. at 310.

Dr. Najar opined Ms. Young could occasionally climb ramps and stairs. The ALJ did not distinguish between climbing ladders/ropes/scaffolds versus climbing ramps or stairs. He determined she "should not engage in climbing[.]" R. at 15. Ms. Young's treating rheumatologist opined she should never climb stairs or ladders. *See* R. at 344. During the hearing the following exchange occurred between Ms. Young's counsel and Ms. Young,

> Q     How about going up and down stairs, have any problems with that?
>
> A     Yes.
>
> Q     What problems?
>
> A     Weakness in the legs.

R. at 32. Ms. Young testified she is five feet, six inches tall and weighs 303 pounds. R. at 29. In his decision the ALJ noted the medical evidence confirms Ms. Young's history of obesity "with BMIs ranging up to the 50s." R. at 16 (citation omitted). "Level III, termed 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater

than or equal to 40." SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). Considering Ms. Young's extreme obesity, her testimony, and, in addition, considering the opinion of her treating rheumatologist, there is evidence to support the ALJ's determination that Ms. Young should not engage in climbing. With a BMI of 48.9 Ms. Young's excessive weight, coupled with her rheumatoid arthritis, undoubtedly causes some limitations. "Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching." SSR 02-1p, at *6

During the hearing the ALJ posed a hypothetical question which limited Ms. Young to occasional crawling. *See* R. at 34. However in the decision the ALJ determined Ms. Young cannot perform crawling. *See* R. at 15. These contrasting determinations are supported by the opinions of Dr. Najar (who found Ms. Young could crawl occasionally) and Dr. Karkhanis (who opined Ms. Young should never crawl). The ALJ administratively erred by changing the crawling limitation from *occasional* during the hearing to *no* crawling in the decision. *See supra* n.5. This administrative error does not constitute a reversible error. The undersigned finds the ALJ accorded more weight to Dr. Najar's opinion about this postural limitation than Dr. Karkhanis' opinion.

Finally the ALJ determined Ms. Young "enjoys gross use of hands, but cannot engage in repetitive gripping, as would be required in assembly line work." R. at 15. Dr. Najar opined Ms. Young is limited in handling or gross manipulation with both hands but is unlimited in fingering (fine manipulation), s*ee* R. at 93, 104. Ms. Young's treating rheumatologist opined she cannot perform gross manipulation, *i.e.,* grasping, twisting, handling**,** but can occasionally perform jobs

requiring fine manipulation, *i.e.,* finger dexterity, *see* R. at 344. At the hearing Ms. Young's counsel specifically inquired about any limitations with the use of hands.

> Q      Okay. You mentioned you're right-handed. Any problems using your hands?
>
> A      I don't write all that well because the pain in my hand.
>
> Q      Okay. Any other problems with your hands?
>
> A      I don't – –
>
> Q      Is there anything else that's difficult?
>
> A      The swelling in my fingers.
>
> Q      Make sure you keep your voice up.
>
> A      Oh, I'm – –
>
> Q      We want to make sure the Judge can hear you. Okay?
>
> A      I'm sorry. The swelling in my fingers is bad and it hurts to write because of the pain shooting up my right arm.

R. at 32-33. Ms. Young's testimony does not support Dr. Karkhanis' opinion that she can never grasp, twist, or handle. She has some limitation with the use of her hands, due to swelling in her fingers, and this condition is most pronounced when she tries to write with her right hand. Ms. Young's testimony is more akin to the opinion of Dr. Najar that she has some limitation with handling (gross manipulation). Dr. Najar was required to explain Ms. Young's manipulative limitation and how and why the evidence supports his conclusion. Dr. Najar explained, "r[igh]t [carpal tunnel syndrome] and bilateral hand tenderness at the PIP joints and would limit frequent handling/grasping." R. at 83, 104. The ALJ relied upon this explanation and thus found Ms. Young should avoid repetitive gripping. The undersigned finds no reversible error in the limitations as found by the ALJ.

*2.     Challenging Weight Assigned to Opinions of Treating Physician*

Plaintiff challenges as erroneous the ALJ's assessment of the opinions of her treating rheumatologist, Dr. Karkhanis. According to Plaintiff the ALJ's rejection of Dr. Karkhanis' opinions on the basis of normal examinations reflects a selective reading of the medical records rather than reading the medical records thoroughly.

The undersigned has reviewed all of the medical records generated by Dr. Karkhanis. This doctor first saw Ms. Young for a rheumatology consultation on December 12, 2011. R. at 330-32. In every subsequent visit, under physical examination, general, Dr. Karkhanis recorded "pleasant, comfortable, in no acute distress" and often noted "obese." *See* R. at 328 (January 24, 2012 visit), 325 (March 5, 2012 visit), 321 (April 13, 2012 visit), 315 (May 8, 2012 visit), 312 (June 5, 2012 visit/alleged onset date), 302 (July 3, 2012 visit), 293 (September 4, 2012 visit), 289 (October 18, 2012 visit), 284 (December 20, 2012 visit).

During these visits when Dr. Karkhanis physically examined Ms. Young, he noted his findings about her musculoskeletal system. On June 5, 2012 Dr. Karkhanis found "[r]ight 3rd and 4th MCPs [Metacarpophalangeal[6] Joints] are swollen and tender, left 3rd MCP tender, bilateral knees tender, but are cool without effusions.[7] MTP [Metatarsophalangeal[8] Joints] squeeze tender." By the next visit, July 3, 2012, Dr. Karkhanis found "[m]ild tenderness at bilateral elbows, 2nd and 3rd PIPs [Proximal Interphalangeal Joints] bilaterally. No synovial swelling." R. at 302. During the September 4, 2012 visit Dr. Karkhanis noted "[p]eripheral joints without any

---

[6] Concerning the fingers.

[7] "[E]scape of a fluid into a part; exudation or transudation." *The Free Dictionary by Farlex*, http://medical-dictionary.thefreedictionary.com/effusions (last visited Oct. 24, 2016).

[8] Concerning the toes.

active synovitis.[9] Knees are somewhat tender to palpation, but are cool without effusions. Lower extremities revealed 2+ pitting edema."[10] R. at 293. At a subsequent visit on October 18, 2012, Dr. Karkhanis found "[t]enderness at 2nd, 3rd, and 5th PIP joints on the right, 2nd and 3rd PIP joints on the left. No subcutaneous nodules." R. at 291. On December 20, 2012, upon examination, Dr. Karkhanis noted "[p]eripheral joints without synovitis or tenderness." R. at 284.

The notations contained in the office visit records do not support Dr. Karkhanis' opinions issued on the medical assessment forms. For instance, on June 5, 2012, via Medical Report Form 500, Dr. Karkhanis reported Ms. Young's presenting symptoms of joint pain and morning stiffness, with a diagnosis of inflammatory polyarthritis. Based on her condition and symptoms, Dr. Karkhanis opined Ms. Young has the ability to perform in an 8 hour work day (a) one hour of sitting, (b) one hour of standing, (c) one hour of walking, (d) one hour of climbing, (e) one hour of reaching and (f) never bending, squatting, or crawling. R. at 310. If Ms. Young was so severely restricted, the office visit records presumably would have documented something other than "pleasant, comfortable, in no acute distress."

On May 14, 2013 Dr. Karkhanis completed two additional forms. On the first, *Clinical Assessment of Pain*, Dr. Karkhanis opined (a) "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work[,]" (b) that physical activity "[g]realty increased pain and to such a degree as to cause distraction from tasks or total abandonment of tasks[,]" and (c) "[d]rug side effects can be expected to be severe and to limit effectiveness due to distraction, in attention, drowsiness, etc." R. at 343. The office visit records

---

[9] "[I]nflammation of a synovial membrane, usually painful, particularly on motion, and characterized by fluctuating swelling, due to effusion in a synovial sac. It may be caused by rheumatic fever, rheumatoid arthritis, tuberculosis, trauma, gout, or other conditions." *The Free Dictionary by Farlex*, http://medical-dictionary.thefreedictionary.com/synovitis (last visited Oct. 24, 2016).

[10] "[T]he accumulation of excess fluid in a fluid compartment." *The Free Dictionary by Farlex*, http://medical-dictionary.thefreedictionary.com/pitting+edema (last visited Oct. 24, 2016).

memorialize Ms. Young's reports of pain and/or morning stiffness. *See, e.g.,* R. at 302 ("She has more pain in her joints after stopping [prednisone;] pain in her elbows, hands and feet and with morning stiffness for up to 45 minutes."). In the office visit records Dr. Karkhanis noted "long-term high-risk medication requiring monitoring: Methotrexate[]", an Anti-Rheumatic prescription. *See, e.g.,* R. at 291, 293, 304. He also noted Ms. Young's hair loss is attributable to methotrexate. *See* R. at 291. He discontinued prescribing methotrexate and prescribed sulfasalazine. *Id.* He also monitored the long-term, high-risk of taking this newly prescribed medication. *See* R. at 284. Further Dr. Karkhanis also carefully monitored Ms. Young's use of prednisone. *See, e.g.,* R. at 304. The medical records generated by Dr. Karkhanis do no describe the severity of pain, limitations or side effects of drugs as opined on the *Clinical Assessment of Pain* form. When asked by her own counsel whether she experiences any side effects from the pain medication, Ms. Young answered, "Not my pain medication; the rheumatoid arth[ritis] medicine, the varoosmide (PHONETIC), is taking my hair out." R. at 33.

Finally, also on May 14, 2013, Dr. Karkhanis completed a *Physical Capacities Evaluation* form. This form is consistent in part with the June 5, 2012 Medical Report Form 500 such as Ms. Young being limited to one hour of walking or standing and one hour of sitting during an eight hour work day. R. at 344. Ms. Young can lift 10 pounds occasionally and 5 pounds frequently. According to Dr. Karkhanis Ms. Young can never (a) push or pull (arm and/or leg controls), (b) climb (stairs or ladders) and balance, (c) grasp, twist or handle (gross manipulation), (d) bend or stoop, (e) reach (including overhead), and (f) work with or around hazardous machinery. *Id.* Based on her impairments Ms. Young is expected to be absent from work more than four days a month. In response to "[p]lease explain and briefly describe the degree and basis for any restriction checked above[,]" Dr. Karkhanis wrote, "[r]estrictions based

on report of pain by patient." *Id.* The multiple physical examinations conducted by Dr. Karkhanis do not support his opinions of significantly reduced level of activity.

Additionally, Plaintiff complains the ALJ improperly considered Ms. Young's conservative treatment as a basis for finding Dr. Karkhanis' opinions inconsistent with the record. She also asserts the ALJ failed to explain why he accorded moderate weight to the opinions of Dr. Karkhanis.

The ALJ explained why he accorded moderate weight to Dr. Karkhanis' opinions. "His severely reduced sedentary assessments for the claimant are not well-supported by the objective examination findings." R. at 17. The ALJ cites a specific example. "[O]n December 20, 2012, Dr. Karkhanis saw the claimant, and reported a normal physical examination, including in terms of her musculoskeletal system." *Id.* Moreover, the basis for finding Dr. Karkhanis' opinions inconsistent with record is *not* due to Ms. Young's conservative treatment. The basis of the inconsistency is Dr. Karkhanis' opinions of *severely reduced sedentary assessments* despite finding Ms. Young, upon physical examination, *pleasant, comfortable, and in no acute distress*. The conservative treatment history is more consistent with *pleasant, comfortable, and in no acute stress* assessments as opposed to the opinions of *severely reduced sedentary assessment*. In conclusion, the ALJ committed no reversible error.

    B.    *Assessment of Ms. Young's Subjective Complaints*

Ms. Young claims the ALJ improperly evaluated her subjective complaints of pain. Specifically, in contravention of *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006), the ALJ identified conditions or objective indicators not listed in Dr. Karkhanis' medical records and thereby improperly found Ms. Young's statements about her symptoms and limitations only partially credible. *See* ECF No. 15-1 at 10. The Commissioner asserts Ms. Young reads *Hines*

too broadly. The lack of objective medical evidence can serve as a partial basis in the credibility finding, provided it is not the sole basis for a credibility finding. *See* ECF No. 16-1 at 14.

In the decision the ALJ addressed Ms. Young's subjective complaints of pain, finding,

> Overall, the undersigned notes that the claimant's statements about her symptoms and limitations are only partially credible, largely due to the objective medical evidence and her treatment history. As discussed above, though the claimant has exhibited subjective tenderness in various joints, on most occasions since the alleged onset date, she has not exhibited any objective swelling, nor have there been any notations in the medical record regarding key signs, such as limited range of motion, abnormal gait, muscle atrophy, etc. Similarly, on most occasions, her respiratory function has presented as normal. Furthermore, her treatment has been entirely conservative, with medication for her impairments, but no hospitalizations or more serious treatment. In addition, the claimant testified at the hearing that her pain medications do offer some comfort, if not full relief of her symptoms. Moreover, though the claimant was somewhat vague in her testimony regarding activities of daily living, she did describe some daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She testified that she shops for short periods, and can lift up to 10 pounds.

R. at 17. The Commissioner argues "the ALJ appropriately emphasized her conservative treatment and positive response to prescribed medications." ECF No. 16-1 at 15 (citation omitted). The ALJ's summary of Ms. Young' testimony however is not completely accurate.

> Q   Tell me, ma'am, what problems do you have on a daily basis?
>
> A   Pain, my joint stiffness, not be[ing] able to get up out of bed, not being able to bathe myself.
>
> Q   When do you experience pain; in your low back?
>
> A   All over.
>
> Q   Do you get relief from the pain medication?
>
> A   No, sir. Just – –

> Q       I'm sorry?
>
> A       It's just a comfort; it never leaves.

R. at 29-30. Ms. Young provided further details in response to a question by her counsel.

> Q       Okay. And that body pain that you were talking about; on a scale from one to ten; ten being the worst pain you can imagine, you have to go to the ER, what would you rank your average pain *with your medications?*
>
> A       A seven.

R. at 32 (emphasis added). Ms. Young's testimony directly contradicts the ALJ's assertion "that her pain medications do offer some comfort, *if not full relief of her symptoms.*" R. at 17 (emphasis added). This inaccurate recitation of testimony however is not reversible error.

Under the Social Security Regulations there is a two-step process for evaluating a claimant's statements about disabling pain or other symptoms. First, a claimant must establish by objective medical evidence a condition reasonably likely to cause the pain claimed. *Hines*, 453 F.3d at 565. Ms. Young has satisfied the first step via the medical records from her treating rheumatologist, Dr. Karkhanis. Second, the ALJ must evaluate the intensity and persistence of the claimant's pain or symptoms and the extent to which the pain or symptoms affect the claimant's ability to work. An ALJ is prohibited from rejecting a claimant's statements about the intensity and persistence of pain or other symptoms "*solely* because the available objective medical evidence does not substantiate [a claimant's] statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (emphasis added).

The medical condition at issue in *Hines* was sickle cell disease ("SCD"). The Fourth Circuit noted, "[b]ecause there is no way to demonstrate objectively that a SCD patient has pain, sufferers are often accused of 'faking' their debilitating symptoms." *Hines*, 453 F.3d at 561. The SSA had denied Mr. Hines' claim mainly because Mr. Hines' claims of disabling pain were not

15

supported by objective medical evidence. *Id.* "Given the unique characteristics of the disease at issue in this case, we hold that the SSA Administrative Law Judge applied an improper standard to disregard the treating physician's opinion that Mr. Hines was fully disabled." *Id.*

Ms. Young has not presented any evidence showing rheumatoid arthritis has unique characteristics comparable to SCD. Signs and symptoms of rheumatoid arthritis include:

- joint pain, such as in the joints of the feet, hands, and knees,
- swollen joints,
- fever,
- limping,
- polyarthritis,
- loss of range of motion,
- tender joints,
- loss of joint function,
- stiff joints,
- fatigue,
- joint redness,
- rheumatoid nodules,
- anemia,
- joint warmth,
- joint deformity, and
- symptoms and signs that affect both sides of the body (symmetry).[11]

---

[11] *Rheumatoid Arthritis: 15 RA Symptoms, Pain Relief, Treatment & Diet*, http://www.medicinenet.com (last visited Oct. 26, 2016).

Unlike the ALJ in *Hines* who failed to credit Mr. Hines with debilitating pain because a laundry list of objective indicators did not appear in the treating physician's medical records, even though "there is no way to demonstrate objectively that a SCD patient has pain," with rheumatoid arthritis there are objective indicators as noted *supra*. In the office visit records Dr. Karkhanis *lists* signs and symptoms of Ms. Young's rheumatoid arthritis. For instance, on July 3, 2012, after conducting a physical examination, under musculoskeletal system Dr. Karkhanis recorded, "[m]ild tenderness at bilateral elbows. 2nd and 3rd PIP bilaterally. No synovial swelling." R. at 302. At a follow-up appointment on September 4, 2012 Dr. Karkhanis wrote, "[p]eripheral joints without any active synovitis. Knees are somewhat tender to palpation, but are cool without effusions. Lower extremities revealed 2+ pitting edema." R. at 293.

By recognizing "on most occasions since the alleged onset date, [Ms. Young] has not exhibited any objective swelling, nor have there been any notations in the medical record regarding key signs, such as limited range of motion, abnormal gait, muscle atrophy, etc.[,]" R. at 17, the ALJ is not, as Plaintiff alleges, applying an improper standard in evaluating her subjective complaints of pain. As the Fourth Circuit noted in *Hines*,

> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Hines*, 453 F.3d at 565 n.3 (quoting *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996)).

The objective medical evidence does not support the degree of limitation as described by Ms. Young. During each office visit between the alleged onset date through December 20, 2012, upon physical examination, Dr. Karkhanis found Ms. Young "pleasant, comfortable, in no acute distress" and also noted her obesity. Further, although Dr. Karkhanis found some symptoms of rheumatoid arthritis, none of the office visit records suggest the severity of pain as claimed by Ms. Young. In short, the objective medical evidence contradicts and is not consistent with the severity and intensity of Ms. Young's complaints of pain. The undersigned finds Plaintiff reads *Hines* too broadly. The ALJ did not commit reversible error.

5. **Conclusion.**

Substantial evidence supports the decision that Ms. Young is not disabled. Accordingly, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.


Date:  October 31, 2016                                   _____/s/_____
                                                          WILLIAM CONNELLY
                                                          UNITED STATES MAGISTRATE JUDGE